IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELNORA HENDERSON,
        Plaintiff,

v.                                        Civil Action No. 3:20cv659

BOSTON SCIENTIFIC CORPORATION,
        Defendant.

## OPINION

This matter comes before the Court on a motion for summary judgment filed by the defendant, Boston Scientific Corporation ("Boston Scientific"). (ECF No. 43.) The plaintiff, Elnora Henderson, alleges that she suffered injuries from a transvaginal mesh implant that Boston Scientific designed and manufactured. Henderson brings eight claims against Boston Scientific arising from these injuries. Boston Scientific moves for summary judgment on all of Henderson's claims. For the reasons explained below, the Court will grant Boston Scientific's motion.

## I. BACKGROUND

On December 4, 2008, Henderson underwent vaginal reconstructive surgery to resolve her pelvic organ prolapse. As a part of the repair, the doctor implanted into Henderson a transvaginal mesh. Specifically, the doctor implanted a Pinnacle Pelvic Floor Repair Kit ("Pinnacle mesh"), a prescriptive mesh implant that Boston Scientific designed and manufactured to reinforce a weakened vaginal wall. Henderson claims that she still suffers from complications and pain that she attributes to the Pinnacle mesh. (ECF No. 49, at 3.)

Henderson participated in a multidistrict litigation in the Southern District of West Virginia ("MDL"). *In re: Boston Scientific Corp., Pelvic Repair System Products Liability Litigation*, No. 2:12-md-2326 (S.D.W. Va. filed Aug. 22, 2012). The plaintiffs in the MDL brought nine causes

of action against Boston Scientific in a master long form complaint ("master complaint"); these claims arose from Boston Scientific's pelvic mesh products, including the Pinnacle mesh. (*See* ECF No. 16-4.) Henderson joined the litigation by filing her short form complaint on February 22, 2013. Henderson's complaint incorporated eight of the nine causes of action listed in the master complaint: negligence for failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Pinnacle mesh (Count I); strict liability for the Pinnacle mesh's design defects (Count II); strict liability for defects in the manufacturing of the Pinnacle mesh (Count III); strict liability for failure to provide warnings about the Pinnacle mesh's defects and adverse effects (Count IV); breach of Boston Scientific's express warranty regarding the safety of the Pinnacle mesh and its fitness for its intended purpose (Count V); breach of implied warranty regarding the merchantability and fitness of the Pinnacle mesh for its intended purpose (Count VI); discovery rule, tolling, and fraudulent concealment to toll the statute of limitations due to Boston Scientific's alleged fraudulent concealment of the Pinnacle mesh's defects (Count VIII); and punitive damages for Boston Scientific's alleged willful misconduct (Count IX). (ECF No. 1 ¶ 13.) Henderson brings each of these claims under Virginia law.[1]

Most plaintiffs in the MDL settled around May 2019. Henderson, however, rejected Boston Scientific's settlement offer and continued her lawsuit separately. The Southern District of West Virginia transferred Henderson's case to the Eastern District of Virginia on August 5, 2020. On February 16, 2021, this Court entered an Initial Pretrial Order directing the party with

---

[1] When a federal court sits in diversity, as the Court does here, the substantive law of the forum state applies. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (explaining that there exists no federal common law governing to tort claims). Additionally, because Henderson's injuries occurred in Virginia, Virginia products liability law governs. *Frye v. Commonwealth*, 231 Va. 370, 376, 345 S.E.2d 267, 272 (1986) ("[Q]uestions of substantive law are governed by the law of the place of the transaction.").

2

the burden of proof—Henderson—to disclose expert witnesses by April 6, 2021, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. Henderson had not disclosed any information for experts by May 26, 2021, when Boston Scientific filed its motion for summary judgment. On July 14, 2021, Henderson informed to the Court that she does not have any experts to support her claims. (ECF No. 49, at 4.) Henderson never responded to Boston Scientific's motion for summary judgment.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the Court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the standard asks whether any *genuine* disputes of material fact exist, the mere presence of *some* factual disputes does not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment may succeed by establishing the absence of a genuine issue of material fact or showing that the other party cannot produce admissible evidence to support their claim. Fed. R. Civ. P. 56(a). "In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the [pleadings]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the party seeking summary judgment properly supports its motion, the opposing party must go beyond the pleadings and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a motion for summary judgment, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d

832, 835 (4th Cir. 1992) (citing *Anderson*, 477 U.S. at 255). The Court, however, does not consider "whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict" for the nonmoving party. *Anderson*, 477 U.S. at 251. As a result, merely showing the presence of some evidence in support of a claim does not allow the claim to survive summary judgment. *See id.* Additionally, the Court does not have a "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *accord* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

When a party appears *pro se*, as Henderson does here, courts do not expect her to frame legal issues with the clarity and precision expected from lawyers. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). Courts ordinarily construe *pro se* pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007). This principle, however, has its limits. *Beaudett*, 775 F.2d at 1278. Courts do not need to conjure up questions not presented to them, discern the unexpressed intent of a party, or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* Nevertheless, courts must still review motions, even if unopposed, and determine "whether the moving party is entitled to summary judgment as a matter of law" based on the materials the parties provided. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

### III. DISCUSSION

#### A. Negligence and Implied Warranty Claims (Counts I and VI)

Boston Scientific seeks summary judgment on Henderson's negligence and implied warranty claims because she does not offer any expert testimony in support of these claims. Under

4

Virginia law, a plaintiff can bring a products liability claim under either a negligence theory or an implied warranty theory. *Jeld-Wen v. Gamble*, 256 Va. 144, 148, 501 S.E.2d 393, 396 (1998). Under either theory, the plaintiff must establish three elements under Virginia law: (1) "the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use"; (2) the defect "existed when it left the defendant's hands"; and (3) the defect "actually caused the plaintiff's injury." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993); *see Evans v. NACCO Materials Handling Grp., Inc.*, 295 Va. 235, 246, 810 S.E.2d 462, 469 (2018). "In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Alevromagiros*, 993 F.2d at 417. When no established norm exists, courts must rely on the testimony of experts to ascertain the applicable safety standard. *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 430, 297 S.E.2d 675, 679 (1982). In addition, a plaintiff must present expert testimony to meet her burden of proof as to causation. *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 510 (E.D. Va. 2013) ("In a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts.").

Thus, for Henderson's negligence and implied warranty claims to prevail, she must prove (1) that the Pinnacle mesh contained an unreasonably dangerous defect, (2) that the defect existed when Boston Scientific sold the Pinnacle mesh, and (3) that the defect caused her injuries. Without expert testimony, however, Henderson cannot prove either the first or third element of these claims.

As to the first element, the master complaint outlines concerns about the design of the Pinnacle mesh, the materials Boston Scientific used to manufacture the Pinnacle mesh, and the

5

degradation of the Pinnacle mesh after implantation.² The master complaint also discusses risks and complications that the Food and Drug Administration identified after approving the Pinnacle mesh as a medical device. The master complaint does not allege, however, that the Pinnacle mesh failed to conform to any existing safety standard. Consequently, to prove the first element of her negligence and implied warranty claims, Henderson must provide expert testimony establishing the safety standard that Henderson alleges Boston Scientific's Pinnacle mesh failed to meet. Henderson's failure to provide such expert testimony means that she cannot prove that the Pinnacle mesh contained an unreasonably dangerous defect. Likewise, Henderson cannot prove the third element of these claims without any expert testimony that supports her allegation that the defect caused her injuries.

Accordingly, by failing to provide any expert witnesses, Henderson cannot prove all the elements of her negligence and implied warranty claims. The Court will, therefore, grant Boston Scientific summary judgment on these claims. *Cf. Ball*, 963 F. Supp. 2d at 510 ("A complete failure of proof concerning an essential element of a party's [claim] necessarily renders all other facts immaterial.").

### B. Strict Liability Claims (Counts II, III, and IV)

Boston Scientific also seeks summary judgment on Henderson's strict liability claims. Virginia law does not "permit tort recovery on a strict liability theory in products liability cases." *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 424 n.4, 374 S.E.2d 55, 57 n.4 (1988); *see Evans*, 295 Va. at 246, 810 S.E.2d at 469 ("Virginia has not adopted a strict liability

---

² Henderson's complaint "incorporate[d] The Master Complaint in MDL No. 2326," (ECF No. 1, at 1), and adopted the allegations in Counts I–VI, VIII, and IX, (*id.* ¶ 13.).

regime for products liability."). Because Virginia law governs Henderson's claims, her strict liability claims fail as a matter of law.

### C. Express Warranty Claim (Count V)

Boston Scientific seeks summary judgment on Henderson's express warranty claim because Henderson presents no evidence that Boston Scientific created an express warranty or breached any such warranty. Under Virginia law, a breach of express warranty claim requires proof of two elements: (1) the existence of a warranty and (2) breach of that warranty. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999). Under Virginia Code § 8.2-313, a seller may create an express warranty through "'[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods' and '[a]ny description of the good' that forms the 'basis of the bargain' between the buyer and seller that the goods will conform to the affirmation, promise, or description." *Jain v. Abbott Labs., Inc.*, No. 7:13cv551, 2014 U.S. Dist. LEXIS 175242, at *19 (W.D. Va. Dec. 19, 2014) (quoting Va. Code Ann. § 8.2-313(1) (1964)). A seller does not, however, create an express warranty by merely affirming the value of the product or providing their opinion or commendation of the product. Va. Code Ann. § 8.2-313(2).

Boston Scientific argues that Henderson offers no evidence that Boston Scientific created an express warranty or that it breached any such warranty. Henderson's complaint relies on the allegations outlined in the master complaint, including that Boston Scientific "made assurances as described herein to the general public, hospitals and health care professionals that the [Pinnacle mesh] w[as] safe and reasonably fit for [its] intended purposes." (ECF No. 16-4 ¶ 73.) Further, the master complaint alleges that doctors relied on that warranty when prescribing and implanting the Pinnacle mesh. (*Id.* ¶ 74.) A liberal construction of these allegations supports the inference that Boston Scientific made the necessary affirmation to create an express warranty. Nevertheless,

7

Henderson's claim fails because she does not provide any evidence to show that the Pinnacle mesh breached that express warranty.[3] *See Collier v. Rice*, 233 Va. 522, 524–25, 356 S.E.2d 845, 847 (1987) (explaining that a party cannot prevail on a breach of warranty claim if "the record is devoid of evidence" supporting the breach). As a result, even when construed liberally and drawing all reasonable inferences in her favor, the Court finds that Henderson provides no evidence in support of her express warranty claim. The Court, therefore, will grant summary judgment on this claim.

### *D. Punitive Damages Claim (Count IX)*

Boston Scientific also seeks summary judgment on Henderson's claim for punitive damages, arguing that she cannot receive an award for punitive damages because her substantive claims fail. In Virginia, "an award of punitive damages must be predicated upon an award of compensatory damages." *Murray v. Hadid*, 238 Va. 722, 732, 385 S.E.2d 898, 905 (1989). Because the Court will grant Boston Scientific summary judgment on Henderson's substantive claims (Counts I–VI), Henderson cannot recover compensatory damages. And because an award of compensatory damages "is an indispensable predicate for an award of punitive damages," *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 159, 313 S.E.2d 384, 388 (1984), Henderson cannot receive the punitive damages she seeks. Accordingly, the Court will grant Boston Scientific summary judgment on Henderson's punitive damages claim.

---

[3] The Court does not comb through the materials transferred to the Court from the MDL to find evidence that supports Henderson's claim. If Henderson intended to use some piece of evidence to address Boston Scientific's assertion that it did not breached an express warranty, she should have responded to Boston Scientific's motion.

### *E. Discovery Rule, Tolling and Fraudulent Concealment Claim (Count VIII)*

Finally, Boston Scientific moves for summary judgment on Henderson's discovery rule, tolling, and fraudulent concealment claim. "The discovery rule provides that under certain circumstances a statute of limitations may extend to when a plaintiff first discovers a defendant's wrongful act." *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 510 (E.D. Va. 2002). Plaintiffs generally raise the discovery rule in anticipation of claims that the statute of limitation bars their claim. Boston Scientific contends that Henderson's claim serves to do just that—protect against any statute of limitations defense that Boston Scientific might raise.

Because the Court will grant summary judgment to Boston Scientific on Henderson's substantive claims for reasons unrelated to the statute of limitation, the Court need not discuss tolling of the statute of limitations.[4] And to the extent Henderson intends her claim to constitute a standalone claim for fraudulent concealment, the Court will grant summary judgment to Boston Scientific because Henderson offers no evidence that Boston Scientific did or said anything

---

[4] Kimberly Mubita's short form complaint brought the same claims against Boston Scientific that Henderson brings in this Court. *Mubita v. Boston Science Corp.*, No. 2:13-cv-11955, 2015 U.S. Dist. LEXIS 135427, at *3 (S.D.W. Va. Oct. 5, 2015). Like Henderson, Mubita's complaint relied on the assertions made in the master complaint. In the master complaint, the plaintiffs argued that the statute of limitations should toll because Boston Scientific fraudulently concealed the Pinnacle mesh's defect. As a result, the parties could not have discovered that the defect caused their injury in time to bring their actions within the statutory period. In Boston Scientific's motion for summary judgment in that case, the district court determined that both Mubita's complaint and the master complaint "raise[d] fraudulent concealment only as a safeguard to toll the statute of limitations." *Id.* at *13–14. The district court granted summary judgment in favor of Boston Scientific on Mubita's discovery rule, tolling, and fraudulent concealment claim, however, to the extent that it constituted a standalone claim for fraudulent concealment. *Id.* at *14.

This Court agrees with the reasoning of *Mubita* court: nothing in Henderson's complaint indicates that she intended to raise fraudulent concealment as an independent claim. And even a liberal reading of the master complaint suggests that the plaintiffs only intended the claim to defeat a statute of limitations defense, not to represent a standalone claim for fraudulent concealment.

"calculated to hinder discovery of the cause of action by use of ordinary diligence." *Newman v. Walker*, 270 Va. 291, 296, 618 S.E.2d 336, 338 (2005).

## IV. CONCLUSION

For the reasons outlined above, the Court finds that, based on the evidence before this Court, no reasonable jury could find for Henderson on any of her claims. The Court will, therefore, grant Boston Scientific's motion for summary judgment. (ECF No. 43.)

Should Henderson wish to appeal this Opinion, she must file a written notice of appeal with the Clerk of Court in the U.S. District Court for the Eastern District of Virginia within thirty (30) days of the date of entry hereof. Failure to file a notice of appeal within that period may result in the loss of the right to appeal.

It is so ORDERED.

Let the Clerk mail a copy of this Opinion to all counsel of record and the *pro se* plaintiff.

Date: 6 August 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge